**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3350
_____

KAREN E. TUCKER,
                                        Appellant,

v.

SECRETARY OF
HEALTH AND HUMAN SERVICES
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 07-cv-02230)
District Judge: Honorable Robert B. Kugler
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 13, 2012

Before:  JORDAN, HARDIMAN and ROTH, Circuit Judges

(Opinion filed May 16, 2012)
_____

OPINION
_____

PER CURIAM

        Appellant Dr. Karen Tucker appeals from an order of the District Court dismissing

her complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).  For the following

reasons, we will affirm.

Dr. Tucker, a podiatrist, and others who were reimbursed for their services to Medicare beneficiaries under Part B, were the focus of an investigation into potential health care fraud in Texas.[1] Dr. Tucker's Medicare payments were suspended, 42 C.F.R. § 405.371, on October 23, 1997, and she eventually was indicted on numerous charges relating to Medicare fraud. On December 18, 1998, Dr. Tucker pleaded guilty to one count of Medicare fraud, in violation of 18 U.S.C. § 1347, in the United States District Court for the Northern District of Texas.[2] On March 5, 1999, she was sentenced to six months of home confinement, three years of probation, and she was required to pay $26,402 in restitution to the United States. See Tucker v. United States, 2001 WL 1613796 (N.D. Tex. December 13, 2001) (denying section 2255 motion to vacate sentence).

Meanwhile, in December, 1997 and January, 1998, Dr. Tucker received letters from several Medicare hearing officers, indicating that they had not received certain required documentation from her (identification of specific claims she wished to appeal, billed charges and correct codes, dates of service, and legible medical records), and therefore her appeals relating to claims for services rendered between 1996 and 1998 were being dismissed. Dr. Tucker was given six months to rectify the documentation problem and reopen her appeals.

---

[1] Medicare is governed by Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395ggg. Part B benefits are supplemental medical insurance benefits available to beneficiaries who enroll and pay additional premiums.

[2] Specifically, Dr. Tucker pleaded guilty to providing podiatry services to one patient without obtaining a specific recommendation and approval for the services from the attending physician.

Following her sentencing in March, 1999, Dr. Tucker began the process of attempting to get paid amounts she believed she was owed by Medicare. Her efforts continued without success for some time. The parties are familiar with these efforts and we thus will not discuss them in detail here. Importantly, in 2003, counsel for Dr. Tucker sent letters to the Center for Medicare & Medicaid Services ("CMS"), Region VI, requesting that CMS assist Dr. Tucker in securing payment for outstanding claims from TrailBlazer Health Enterprises, LLC ("TrailBlazer"), a Medicare Part B carrier.[3] Eventually, CMS staff received three computer disks with claims information. Due to the large number of claims involved, CMS asked TrailBlazer to randomly select a claim for review from each of the eighteen facilities listed in the submitted information. The review was not favorable to Dr. Tucker. It indicated that many claims had been disallowed for lack of medical necessity, with first level appeals affirming the denials, and that other claims were disallowed for lack of medical necessity, invalid procedure codes, and invalid dates of service.

CMS concluded that TrailBlazer had processed and adjudicated the claims correctly and in accordance with Medicare regulations. CMS also concluded that Dr. Tucker had been provided with appeal rights, and that, since the claims were processed for payment in 1996 through 1998, the time for appealing the claim determinations had expired. TrailBlazer records further indicated that all cases submitted for appeals by Dr. Tucker had been adjudicated and closed through the Fair Hearing Department. In 2006, CMS reiterated that Dr. Tucker's appeals were dismissed because she did not provide

_____

[3] CMS is responsible for administering Medicare. CMS contracted with TrailBlazer to determine whether claimed services were medically necessary, to calculate the amount of any Part B payments due, and to pay claims out of the Medicare Trust fund.

certain requested documentation within the time allowed. CMS noted that TrailBlazer, in reaching its conclusion about the missing documentation, had selected a sample of one appeal from each hearing officer involved in Dr. Tucker's appeals, consisting of a total of forty beneficiaries. A CMS official wrote to Dr. Tucker and advised her that the dismissal of her appeals was final, and constituted the final decision of the Secretary.

In May, 2007, Dr. Tucker filed a civil complaint pro se, with numerous exhibits attached, in the United States District Court for the District of New Jersey, requesting payment of certain outstanding claims. The Secretary of the United States Department of Health & Human Services moved to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The Secretary argued that jurisdiction was lacking because Dr. Tucker never submitted timely requests for payment on some of her claims, and because she did not timely prosecute the vast majority of her claims through the entirety of the administrative appeals process. In opposition to the motion to dismiss, Dr. Tucker argued that she was prevented from submitting claims and appellate documentation to Medicare by a United States Magistrate's pretrial release order, issued on March 24, 1998, which made her subject to the condition that she not engage in the practice of podiatry, and that she avoid all contact with anyone who might be a witness in her case, including any health care providers, doctors, nursing homes, Medicare personnel, and patients.

The District Court granted the Secretary's motion and dismissed Dr. Tucker's complaint. She then sought reconsideration of that order. In an order entered on July 25, 2011, the District Court denied the motion for reconsideration. Dr. Tucker appeals pro

4

se, and has moved pursuant to Federal Rule of Appellate Procedure 10(e) to expand the record.

We will affirm. We have jurisdiction to review the District Court's final order pursuant to 28 U.S.C. § 1291. We review de novo the District Court's dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction. See Metropolitan Life Ins. Co. v. Price, 501 F.3d 271, 275 (3d Cir. 2007). The District Court's determination of facts with respect to jurisdiction is reviewed for clear error. See Washington v. Hovensa LLC, 652 F.3d 340, 341-42 (3d Cir. 2011). Where a motion constitutes a factual (as distinct from a facial) attack on the existence of subject matter jurisdiction, no presumption of truthfulness attaches to the plaintiff's allegations. Mortensen v. First Federal Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). If the factual record is adequate, the District Court may weigh the evidence presented by the parties to determine if subject matter jurisdiction exists. See Gould Electronics Inc. v. United States, 220 F.3d 169, 177 (3d Cir. 2000).

A district court has jurisdiction over an appeal taken from a final, reviewable decision of the Secretary made after a hearing in a Medicare case. 42 U.S.C. § 405(g); 42 U.S.C. § 1395ff(b)(1). Without that final, reviewable decision, there is no subject matter jurisdiction in the district courts. See Fitzgerald v. Apfel, 148 F.3d 232, 234 (3d Cir.1998) (citing Mathews v. Eldridge, 424 U.S. 319, 328 (1976)). The final, reviewable decision requirement "consists of two elements, only one of which is purely 'jurisdictional' in the sense that it cannot be 'waived' by the Secretary in a particular case. The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted. The nonwaivable element is the requirement

5

that a claim for benefits shall have been presented to the Secretary." Matthews, 424 U.S. at 328.

The District Court concluded that Dr. Tucker arguably satisfied the jurisdictional "presentment" requirement. The court reasoned that the Secretary had asserted that roughly 7000 of Dr. Tucker's claims were submitted for payment, denied, appealed to the carrier hearing level, and dismissed for abandonment pursuant to 42 C.F.R. § 405.832(b). The court further reasoned that the remainder of Dr. Tucker's claims were not submitted to Medicare before Dr. Tucker's criminal prosecution, but they appeared to have been presented to the Secretary in the manner requested by CMS following Dr. Tucker's sentencing. Accordingly, the presentment requirement appeared to be satisfied.[4]

Nevertheless, the District Court further concluded that it was beyond dispute that Dr. Tucker did not completely exhaust her administrative remedies because she did not timely prosecute her claims through the entirety of the administrative appeals process or timely file certain of her claims. We agree with the District Court that Dr. Tucker did not properly exhaust her administrative remedies. The administrative review process of unfavorable decisions by Medicare Part B carriers provides that the carrier make an initial determination when a request for payment is submitted. 42 C.F.R. § 405.801(a). A dissatisfied claimant may then request a carrier-level review of the claim. See id. If unsatisfied with the result, the claimant may request a carrier hearing, see id., also known as a fair hearing. Following the fair hearing, further review is available by way of a

_____

[4] In the margin of his brief, the Secretary has noted a basis for disagreeing with the District Court's presentment determination, see Appellee's Brief, at 41 n.11, but, in the main, the Secretary does not argue that Dr. Tucker did not meet the non-waivable presentment requirement for exhaustion.

6

hearing before an Administrative Law Judge.  See id.  After that, a dissatisfied claimant may request review by the Departmental Appeals Board.  See id.  The regulations envision an appeal to a federal district court only after this process is completed.  See id.

The record establishes that Dr. Tucker did not pursue any of the claims at issue in her complaint to completion.  She appealed to the District Court from the dismissal of her appeals by the hearing officers for abandonment.[5]  A fair hearing dismissal is not a final order from which a claimant may appeal under section 405(g).  See Bacon v. Sullivan, 969 F.2d 1517, 1520-21 (3d Cir. 1992) (decision of Appeals Council not to consider claimant's untimely request for review was not a reviewable, final decision of the Secretary); Long Island Ambulance, Inc. v. Thompson, 220 F. Supp.2d 150, 164 (E.D.N.Y. 2002) (Medicare plaintiff failed to exhaust administrative remedies when it withdrew its appeal before the ALJ).  See also Brandyburg v. Sullivan, 959 F.2d 555, 560 (5th Cir. 1992) (ALJ's dismissal of disability claimant's appeal after claimant failed to appear at hearing not final, reviewable decision).  In addition, to the extent that Dr. Tucker first presented certain claims post-sentencing for services rendered prior to her criminal prosecution, the claims were untimely filed.  42 C.F.R. § 424.44 (effective to 12/31/08).

As explained by the District Court, if the Secretary declines to waive exhaustion as the Secretary did here, the court itself may waive the requirement in appropriate circumstances.  Constitutional, certain statutory, and collateral issues may provide a basis

[5] We note that, in another of Dr. Tucker's cases, she properly completed the administrative review process by appealing to an ALJ and the Medicare Appeals Council, a component of the Departmental Appeals Board.  See Tucker v. Thompson, 2006 WL 39644, *2 (D.N.J. January 9, 2006).

for a court to waive the exhaustion requirement in cases brought pursuant to section 405(g).  See Bacon, 969 F.2d at 1521 (court would waive exhaustion if claimant presented colorable constitutional argument); Rankin v. Heckler, 761 F.2d 936, 940 (3d Cir. 1985) (same, where claimant raised statutory issues upon which Secretary had taken final position).  See also Bowen v. City of New York, 476 U.S. 467, 483 (1986) (if plaintiff's claim is collateral to her claim for benefits, exhaustion may be waived).  "In those cases, the requirement of exhaustion does not serve any underlying policy, because in the former case the federal court is more qualified to address constitutional questions than the agency and in the latter case further appeals are futile in light of the final position already taken."  Rankin, 761 F.2d at 941.

Here, the District Court properly declined to waive exhaustion.  Dr. Tucker raised no constitutional issues or issues that were collateral to her claims for payment.  Instead, she argued that the Government created an impediment to exhaustion, and she thus should not be penalized for failing to submit the necessary documentation to Medicare.  Specifically, she argued that requiring her to exhaust her administrative remedies would have potentially subjected her to further superseding indictments and perhaps the loss of freedom.[6]  She also argued that she could not submit the proper documentation because the Government seized her records pursuant to a warrant on May 6, 1996, and did not return them until August, 1999.

---

[6] During the period of her original release, Dr. Tucker contacted certain physicians, seeking to document that she had in fact been authorized by them to provide podiatric care for their patients.  Ten of these physicians informed the Government of the contact, and, as a result, the Government issued a superseding indictment charging Dr. Tucker with obstruction of justice.

The District Court was not persuaded by these arguments and neither are we. Dr. Tucker's fair hearing appeals were dismissed for abandonment in December, 1997, and in January, 1998 because she failed to adequately document her claims. A hearing officer may, for good cause shown, vacate any dismissal for abandonment within six months of the dismissal. 42 C.F.R. § 405.832(e). Dr. Tucker was informed that the dismissals could be vacated if she submitted the required documentation within six months of the dismissals. There is no evidence that she ever did so. The Magistrate Judge's release order was not issued until March 24, 1998, several months after the dismissals. Moreover, at a hearing on May 13, 1998 before the Chief Judge of the Northern District of Texas, both the Government and Dr. Tucker indicated their understanding that the Magistrate Judge's release order did not prevent Dr. Tucker from submitting claims or the requested documentation. Accordingly, there was only a six-week period from March 24, 1998 until May 13, 1998, when it may have reasonably seemed to Dr. Tucker that prosecuting her claims would place her in contempt of court. Dr. Tucker also had substantial other opportunities to submit the appropriate documentation, including initially, when she first presented her claim for payment, and then later upon learning of the hearing officers' initial requests for more information. Dr. Tucker did not take advantage of these other substantial opportunities and thus judicial waiver of the exhaustion requirement in her case would not have been proper.

The District Court further concluded that the record flatly contradicted Dr. Tucker's other argument that she could not submit the proper documentation because the Government seized her records pursuant to a warrant on May 6, 1996. We have carefully reviewed the record, and we conclude that the District Court did not clearly err in relying

9

on Dr. Tucker's own statements and the testimony of her billing agent at a hearing on April, 29, 1998 in finding that Dr. Tucker had the required documentation at her disposal, notwithstanding the seizure. See Washington, 652 F.3d at 341-42 (District Court's determination of facts with respect to jurisdiction reviewed for clear error); Mortensen, 549 F.2d at 891 (in factual attack no presumption of truthfulness attaches to plaintiff's allegations).

In sum, the District Court properly concluded that a fair hearing dismissal on the grounds of abandonment is not a final, reviewable order under section 405(g), see Bacon, 969 F.2d at 1520-21; Long Island Ambulance, 220 F. Supp.2d at 164,[7] and that Dr. Tucker could have exhausted her administrative remedies in a timely manner. Waiver of exhaustion was not warranted in Dr. Tucker's case. The District Court lacked jurisdiction over Dr. Tucker's complaint, and properly dismissed it and her motion for reconsideration, which did nothing to cure the jurisdictional defect.

For the foregoing reasons, we will affirm the orders of the District Court dismissing the complaint for lack of subject-matter jurisdiction and denying the motion for reconsideration. Appellant's motion to expand the record, Fed. R. App. Pro. 10(e), is denied because, in effect, it is nothing more than a motion to supplement the record. Appellant had ample opportunity in the proceedings below to present documents.

---

[7] This is so notwithstanding CMS's letter indicating that dismissal of Dr. Tucker's appeals constituted the final decision of the Secretary. The letter does not establish that the decision of the Secretary was a final, reviewable decision in the legal sense. Counsel for CMS later clarified for Dr. Tucker that she had failed to timely exhaust her administrative remedies and thus there was no opportunity for review in a federal court.